



## OPINION

No. 04-10-00303-CR

Joe Thomas **ESTRADA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR5920
Honorable Dick Alcala, Judge Presiding[1]

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  August 24, 2011

AFFIRMED

Joe Thomas Estrada was convicted of capital murder for killing Viola Barrios during the

commission of a burglary at her residence.  During the punishment phase of the trial, the jury

answered the first special issue in the negative, and Estrada was sentenced to life imprisonment.

Estrada appeals the judgment, contending the evidence is legally insufficient to support the jury's

verdict, the trial court erred in failing to include a lesser-included offense in the jury charge, and

the trial court erred in making various evidentiary rulings.  We affirm the judgment.

---

[1] Judge Dick Alcala is a senior judge sitting by assignment.

**BACKGROUND**

At approximately 10:00 a.m. on April 24, 2008, the San Antonio Fire Department responded to a report of a fire at Viola Barrios's residence. Stephen Watts, a San Antonio firefighter, testified that when he arrived the front door of the house was locked and protected by burglar bars, but the back door was "wide open." David Nielson, another firefighter, testified he entered the bedroom and found Barrios dead, lying on the floor next to a bed, and partially burned by the fire. The first responders also testified they saw trauma to the side of the victim's head. Nielson testified the fire flared several times after initially being extinguished, indicating to him the presence of an accelerant.

After the body was discovered, police and arson investigators were called to process the scene. Arson Investigator Michael Leroy testified he saw at least two points of origin of the fire in the house — the mattress in the bedroom and a pile of papers located in the dining room. He also testified that he found several burn patterns in the residence indicating that an accelerant was poured on the floor to start the fire. Jim Swindell, a chemist with the State Fire Marshall arson lab, testified he found gasoline on several evidence samples taken from the residence. Anthony Guerrero, another arson investigator, stated in his opinion the fire was started anywhere from two hours to thirty minutes before the fire was reported. He also testified that based on his sixteen-years experience as an arson investigator, it would not be unusual to have the person who set the fire watch it burn. Two firefighters testified they saw Estrada watching their activities from the roof of a house next door to Barrios's house. One firefighter testified this occurred at approximately 11:00 a.m., and he watched Estrada climb off the roof and back into the house through a window.

San Antonio Police Officer Chris Sawyer testified he was dispatched to assist the firefighters by controlling traffic in the area. While at the scene he observed a hole in one of the front windows of Barrios's home. He told the jury that burglars often make this type of hole to unlock a window and gain entry into a house. Officer Sawyer also testified that he learned from Barrios's family members that the victim's silver Mercedes was missing, and he reported the vehicle stolen.

Dr. John Stash testified he performed the autopsy on the victim and in his opinion the cause of death was an arrowhead embedded in the victim's skull. The witness described the arrowhead as a Muzzy 100, which penetrated the skull to a depth of seven centimeters. Dr. Stash told the jury the victim could not be identified in the traditional manner due to the injuries caused by the fire. Dr. David Senn, a forensic dentist, testified he identified the victim as Barrios through dental comparisons.

Ray Rice, who lived two houses away from Barrios, testified that at around 4:30 a.m. on the morning of the fire he went outside to check on some pipes he had repaired the night before. He noticed what he thought was the victim's car parked on the street. He told the jury this was unusual because the victim almost always parked her car in her driveway. When she parked on the street, it was in a different location. As he was leaving for work that morning around 8:30 a.m., Rice noticed the car was still there, and he called 911 because he was concerned about the car. Rice testified that while talking with the 911 operator, he saw a young man he identified as Estrada run around the corner of the car. He noticed the hazard lights on the car flashed as if someone were using a remote key device. As Estrada ran by, Rice asked him if he knew who owned the car. Estrada replied it was Barrios's car and continued on his route. Rice testified that as he started to drive off he saw Estrada pass by again. Rice stopped his vehicle and asked

Estrada his name and where he lived. When Rice threatened to call the police because Estrada would not respond, Estrada finally identified himself as Joe Estrada. Rice testified he did not see anyone with Estrada.

Estrada was developed as a possible suspect and the police began to reconstruct his movements on April 24, 2008. At trial, the State introduced a videotape that showed a person appearing to use a credit card to buy gasoline at a convenience store at 5:27 a.m. The video depicts the person apparently putting gasoline in the gas tank of a silver Mercedes and at one point, opening the trunk, returning to the gas pump for a few moments, then placing something back in the trunk before getting into the car and driving off. Other evidence established the credit card belonged to the victim.

Detective Frank McBlain testified that on the morning of the fire he was a patrol officer working radar in a school zone. He stopped Estrada for speeding and gave him a ticket for several traffic violations. A copy of the citation was placed in evidence. The vehicle description and license plate number on the citation demonstrate Estrada was driving the victim's car. The ticket was issued at approximately 8:07 a.m.

Christian Resendez, a friend of Estrada, told the jury Estrada called him around 9:30 a.m. on April 24, 2008 and offered to take him to breakfast. Christian testified Estrada was driving a silver Mercedes when he arrived at his house, and they went to an IHOP restaurant for approximately thirty minutes. Estrada then drove Christian home and left. The State introduced a video recording obtained from the IHOP restaurant surveillance cameras, and Christian identified himself and Estrada as they were walking into the restaurant. The clock visible on the video indicates it was 9:32 a.m. when Christian and Estrada entered the restaurant.

Christian testified Estrada returned to his house later that same afternoon, and they went to a Best Buy store where Estrada purchased a laptop computer and other computer accessories. The State placed into evidence a copy of the store's surveillance tapes. Christian again identified himself and Estrada as they entered the store. The clock visible on the video indicated 14:37. Christian said they went back to his house after the purchases were made. Christian's parents testified Estrada was at their home with Christian that afternoon. Jesse Resendez, Christian's father, testified that at one point he, Estrada, and several of his family members went outside to look at what Estrada described as "his car." Jesse described the vehicle as a silver Mercedes. Estrada was invited to have supper, but Estrada left for a short while and came back with a new cell phone purchased from Wal-Mart. Christian testified he and Estrada went to a function in downtown San Antonio that evening, and Estrada later drove him back home and left.

San Antonio Police Detective Holley Ripley testified that she established surveillance of Estrada's home on April 24, 2008. Detective Ripley testified that at approximately 11:46 p.m. she saw Estrada walk by her vehicle, while talking on a telephone and crying. She approached Estrada and identified herself as a police officer. She asked Estrada if she could talk with him, explaining that she was talking with the neighbors of the victim. Estrada acknowledged he was aware of the victim's death. Detective Ripley testified she next asked Estrada if she could search him for weapons and he consented. In his pockets, she found a key to a Mercedes Benz and credit cards belonging to the victim. At that point, she placed Estrada under arrest for possession of stolen property, handcuffed him, and placed him in the back of a patrol vehicle driven by Officer Ray Naylor. Detective Ripley testified that Estrada began sobbing uncontrollably while in the patrol car. Both Detective Ripley and Officer Naylor testified Estrada repeatedly said "I'm sorry I did it."

Estrada was taken to police headquarters where he was interviewed. He was released that night and returned home. The next morning police obtained an arrest warrant and search warrant for his residence and executed both warrants at approximately 9:15 a.m. During the search, police found two compound bows, numerous arrows, and components to make additional arrows. They also found arrowheads similar to the one removed from the victim's head during the autopsy. Gary Gassman, an owner of an archery shop in San Antonio, testified that the Muzzy 100 arrowhead was designed as a "hunting" point, meaning that it was designed to kill. He described the arrowhead as having razor edges to facilitate penetration of the intended target.

The jury was charged in accordance with the allegations of the indictment. It was instructed to return a verdict of guilty of capital murder if it found beyond a reasonable doubt Estrada intentionally caused the death of Barrios while in the course of committing or attempting to commit the offense of burglary of a habitation owned by Barrios and used a deadly weapon, an arrow. The jury returned a guilty verdict.

### DISCUSSION

### SUFFICIENCY OF THE EVIDENCE

Estrada contends the evidence is legally insufficient to support his conviction for capital murder. Estrada argues that the evidence is insufficient to demonstrate he burglarized the victim's residence, that he killed the victim or did so intentionally, and that the murder was "committed in furtherance of the burglary."

We review the evidence for legal sufficiency by looking at all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010); *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005).

We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We must defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see also Brooks*, 323 S.W.3d at 912 ("direct-appeal courts should review a jury's verdict under deferential standards.") "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The standard of review is the same for cases relying on either direct or circumstantial evidence. *Id*. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of the incriminating circumstances is sufficient to support the conviction." *Id*.

Although Estrada argues no evidence places him inside the victim's home, the record indicates otherwise. The victim was killed sometime between shortly before midnight and before 10:00 a.m. when the fire was reported. A convenience store video shows Estrada driving the victim's car at 5:27 a.m. on April 24, 2008. Diana Barrios Trevino testified her mother kept the keys to the vehicle and her credit cards in her purse. The crime scene photographs show the purse open in a room in Barrios's house with its contents spilled out. Numerous witnesses place Estrada in the car at various times on April 24, 2008. Estrada claimed the victim's car as his own in his conversation with the Resendez family. Estrada also used the victim's credit card throughout the day. It is well-settled that a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary. *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*,

185 S.W.3d 904, 905 (Tex. Crim. App. 2006). There was sufficient evidence to permit the jury to conclude Estrada committed the burglary.

The evidence is also sufficient for a rational jury to have concluded Estrada intentionally caused Barrios's death. The various witnesses who saw Estrada near the victim's residence indicated he was alone. There is no evidence that more than one person was responsible for the victim's death. It is a reasonable inference that the same person who committed the burglary was responsible for killing Barrios. Although the arrowhead found lodged in the victim's head was not matched by forensics to any of the archery equipment found in Estrada's residence, the arrowhead was of the same type and manufacture as other arrowheads located in his residence. There was sufficient evidence upon which a rational jury could have found beyond a reasonable doubt Estrada murdered Barrios. As to whether it was intentional, Estrada was relatively close to the victim when he shot her with the arrow given the dimensions and layout of the bedroom[2] where the victim was found. Again, a rational jury could infer Estrada intended the victim's death when he shot her in the head at close range with the arrow fitted with an arrowhead designed for killing prey. The evidence is legally sufficient to support the jury's verdict.

## LESSER-INCLUDED OFFENSE

Estrada next contends the trial court erred by refusing to include the lesser-included offense of murder in the jury charge. He argues he was entitled to the jury instruction because there was evidence a bow could "misfire" when used with a mechanical release.[3] However, to be entitled to a lesser-included instruction in the jury charge, there must be some evidence that a defendant is guilty only of the lesser offense. *Hampton v. State*, 109 S.W.3d 437, 440 (Tex.

---

[2] The bedroom was 11'8" x 14"2' in dimension.

[3] Gassman, the State's archery expert, testified that few modern archery enthusiasts use their fingers to release the bowstring once it is pulled back to fire the arrow. Rather, a mechanical release is used to hold the bowstring until released by the triggering device on the release. Such a mechanical release was found in the victim's car when it was recovered.

Crim. App. 2003). "[T]here must be some evidence from which a jury could rationally acquit the defendant of the greater offense while convicting him of the lesser [offense]." *Id.* "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser‑included offense for the finder of fact to consider before an instruction on a lesser‑included offense is warranted." *Id*. at 441. Here, there is simply no evidence "directly germane" to the lesser-included offense; that is, there is no evidence that Estrada used a mechanical release, the bow "misfired," or that the killing was not intentional. The trial court did not err in refusing to include a lesser-included instruction in the jury charge.

## EVIDENTIARY RULINGS

Estrada makes several complaints about the trial court's decision to admit or exclude various items of evidence. We review a trial court's decision on evidentiary rulings under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court does not abuse its discretion if its decision lies within a zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

### *Defendant's Statement*

Estrada asserts the trial court erred when it excluded defense exhibits 4, 5, and 6, which are video recordings of statements he made to police after his arrest. However, the record demonstrates that only defense exhibit 6 was offered into evidence before the jury. Defense exhibit 6 is a redacted portion of his statement to police after his second arrest, during which he admitted participation in the burglary, but denied direct responsibility for killing Barrios. The exhibit apparently contained the final minutes of a much longer interrogation. Estrada contends

the exhibit was admissible under the rule of optional completeness and as a statement against interest. We will discuss each in turn.

*Optional Completeness*

Estrada asserts the excerpts of his statement to the police were admissible under the rule of optional completeness because Detective Randal Hines testified that he listened to part of the Estrada's interrogation conducted by another detective and then took various actions to collect evidence. Estrada also argues that admission of his statements when arrested by Detective Ripley—"I'm sorry I did it"—requires the admission of his later statement to police to properly place his earlier "admission" into context. We disagree with both arguments.

Rule 107 of the Texas Rules of Evidence, entitled "Rule of Optional Completeness," in relevant part states:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

TEX. R. EVID. 107.

In the excerpts, Estrada admits he acted alone in committing the burglary and the murder of Barrios. He asserts he shot the arrow in the dark, but he also acknowledges that he could see her sitting in her bed. He states he shot the arrow because he "got scared" when she awoke. Estrada is crying as he answers the detective's questions.

As to the "I'm sorry" statement, there is no mention of or reference to that statement in the excerpts contained in defense exhibit 6. As such, there is no evidence that defense exhibit 6 was necessary to make the earlier "I'm sorry" statement fully understood or explained or that it was "on the same subject." *See id.; see also Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim.

App. 2004) (holding for statement to be admissible under rule 107, omitted portion of the statement must be on "same subject" and must be "necessary to make it fully understood"). The defense exhibit was not admissible under rule 107 to explain the earlier "I'm sorry" statement.

Estrada also asserts his statements should be admitted because some of the witnesses testified they listened to Estrada's conversation with the detective and then took action to collect evidence relating to the crime. Estrada argues this testimony gave the jury the impression that Estrada was "freely confessing" to the murder. We again disagree with this rationale for admission of the statements. None of the witnesses testified as to the content of Estrada's conversation with the detective. His argument fails because the rule is applicable only if one party puts in evidence "part of an act, declaration, conversation, writing or recorded statement." TEX. R. EVID. 107. The State never put in evidence any part of the recorded statement. The rule is not implicated by any inferences a jury might draw from other evidence or testimony.

### *Statements Against Interest*

Estrada also contends his statements were admissible as statements against interest pursuant to Rule 803(24) of the Texas Rules of Evidence. The State argues they were not statements against interest within the meaning of the rule because the statements were actually self-serving.

Rule 803(24) provides an exception to general prohibition against hearsay statements:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX. R. EVID. 803 (24). When determining whether to admit a defendant's statement under this rule, the trial court should balance the defendant's "competing self-serving and contrary interests to determine their predominant nature and the level of trustworthiness to be accorded." *See Wood v. State*, 18 S.W.3d 642, 651 (Tex. Crim. App. 2000). The hearsay exception does not apply if the statement tends to absolve the defendant of criminal responsibility. *Id.*

We hold Estrada's statements were not admissible because they were not truly inculpatory statements. At the time Estrada admitted he acted alone, he was attempting to downplay any notion that he intentionally caused the victim's death – an element of capital murder. Estrada claimed he shot "in the dark" and "didn't do it on purpose." He stated that "he was not a murderer" but "just needed the money." His statements that he "got scared" when the victim awoke and shot the arrow "at her" but "couldn't see her because it was too dark" are aimed to deflect any responsibility for capital murder even though the statements would expose him to liability for a lesser crime. Thus, the predominant nature of the statements are exculpatory as Estrada sought to avoid rather than to admit to criminal responsibility, and the level of trustworthiness is low. *See Hernandez v. State*, 171 S.W.3d 347, 356 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd) (holding in capital murder case trial court did not abuse discretion in refusing to admit defendant's statement because "[a]ny inculpatory significance of the statement—i.e., admitting involvement in a robbery—is minor in comparison to the self-serving nature of appellant's statement that he did not plan or participate in the shooting"). Any portion of the statements that tended to expose Estrada to criminal liability was actually exculpatory given the circumstances under which the statements were made. The trial court did not abuse its discretion in refusing to admit defense exhibit 6.

*Photographs*

Estrada contends the trial court erred in admitting ten photographs in violation of rule 403 of the Texas Rules of Evidence because the probative value was substantially outweighed by the prejudicial effect of the evidence. One photograph, State's exhibit 123, shows a close-up of the victim's mouth and was used to identify her from dental records. The mouth is open and most of her teeth are visible. The skin surrounding the mouth is charred and burned. The remaining nine photographs about which Estrada complains were taken during the autopsy. Some of the photographs depict the wound and resulting injuries to the victim's head caused by the arrow. Other photographs show the damage to the victim's face, hands, and arm caused by the fire. Bone is exposed in some of the pictures, and the fingers were burned off the hands. At trial, Estrada offered to stipulate to the identity of the victim to obviate the State's need to place State's exhibit 123 into evidence. He also argued the autopsy photographs were cumulative of the autopsy report that was already in evidence.

In determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, the court may consider a variety of factors, including: "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009), *cert. denied,* 130 S.Ct. 3411 (2010). "Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself." *Id.* A photograph is also "generally admissible if verbal testimony about the matters depicted in the photograph is also admissible." *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004).

Although State's exhibit 123, the picture of the mouth, is in color and shows charred skin, the picture is not gruesome. Dr. Seen testified he used the photograph to provide orientation of the teeth during his dental examination and referred to it sparingly in his testimony. We conclude the trial court did not abuse its discretion by admitting the photograph, because it is not outside the zone of reasonable disagreement to conclude that its probative value was not substantially outweighed by its prejudicial effect. *See Montgomery*, 810 S.W.2d at 380.

The autopsy photographs are all in color and are close-ups of the wounds or injuries depicted. No other autopsy photographs were admitted into evidence, although the court had previously admitted two x-rays that showed the outline of the arrowhead lodged in the victim's skull. One of the photographs shows the damage caused to the underside of the scalp and another shows the surface of the brain and corresponding damage to it. These photographs and the photographs displaying the injuries caused by the fire are certainly gruesome, but only due to the nature and location of the wounds or injuries. However, the medical examiner's testimony about the wounds was relevant and the pictures were merely a visual representation of that testimony. The wounds were also described in the autopsy report, which was admitted into evidence without objection. Estrada's argument appears to be that it was error to show the results of the crime because the results were horrific. But the result of the crime is the very issue that is relevant and probative:

> Appellant must realize that it is precisely the quality which we describe as "powerful" which gives rise to his arguments that the photographs are prejudicially inflammatory. But when the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome.

*Parades*, 129 S.W.3d at 540 (quoting *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995)). The trial court did not abuse its discretion by admitting the autopsy photographs.

### *Summary Timeline Exhibit*

Last, Estrada asserts the trial court erred by admitting State's exhibit 242, a chart prepared by the prosecutors, into evidence. The exhibit is a poster-sized sheet that lists Estrada's entry and exit times shown on four surveillance videos. Estrada contends the exhibit was admitted without a proper foundation and was not "probative." The State counters the exhibit was in the nature of a summary exhibit permitted under rule 1006.[4]

At least one of our sister courts has held that a mere summary of other evidence already before the jury is not relevant evidence because it "constitutes no proof of any fact in issue." *Markey v. State*, 996 S.W.2d 226, 231-32 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Although rule 1006 certainly permits the use of summaries, it does not dispense with the need for a witness to lay the proper predicate for admission. Here, no witness testified before the jury that the exhibit accurately reflected the times indicated on the various video recordings that were in evidence. The trial court erred in admitting the exhibit. *See Wheatfall v. State*, 882 S.W.2d 829, 839 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1086 (1995) ("While rule 1006 clearly contemplates the admission of summaries in certain instances, the rule in no way indicates that a prosecutor can summarize her case on legal paper and submit those documents to the trial court as 'evidence.'").

Because the error is non-constitutional in nature, we reverse only if the error affected Estrada's substantial rights. *See* TEX. R. APP. P. 44.2. The error did not. The video recordings

---

[4] "The contents of voluminous writings, recordings, or photographs, otherwise admissible, which cannot conveniently be examined in court, may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court." TEX. R. EVID. 1006.

had already been played for the jury. While the jury may not have been able to remember the details of each video recording, it could have reviewed each video during its deliberations to determine the times listed on the exhibit. Furthermore, Estrada does not complain that the exhibit is in any way inaccurate. *See Markey*, 96 S.W.2d at 232 (reasoning that no harm due to erroneous admission of summary in part because defendant never contended summary was inaccurate); *Wheatfall*, 882 S.W.2d at 839 (reasoning improperly admitted summary did not cause harm when its contents had been admitted before the jury through other evidence). Although the trial court erred in admitting the summary exhibit, the error was harmless.

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

Publish