

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00438-CR

**NANCY MANCUSO GELBER,**

                                                 **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                 **Appellee**

---

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 12-00783-CRF-85

---

## MEMORANDUM OPINION

---

The jury convicted Nancy Mancuso Gelber of the offense of solicitation to commit capital murder and assessed her punishment at thirty years confinement. We affirm.

### Background Facts

Joseph and Nancy Gelber were married in 2003. Joseph filed for divorce in October 2011, but he and Nancy continued to reside in the same house. Nancy was the beneficiary of Joseph's three life insurance policies. Nancy was not working at the time

Joseph filed for divorce. She suffered from "essential tremors" which caused her to shake.

Nancy met Jeremy Kidd through a mutual acquaintance. Kidd had an extensive criminal history, and he testified that he provided drugs to Nancy. Nancy and Kidd became friends, and the two discussed killing Joseph. Kidd met with Investigator Ledesma at the Brazos County Sheriff's Office and provided information of a possible murder for hire offense. At the initial meeting, Kidd did not identify the person planning the murder for hire. During a later meeting with Investigator Ledesma, Kidd, Kidd's attorney, and others, there was an understanding that Kidd would be a confidential informant and provide information concerning the offense, but there was no formal agreement and Kidd was not paid for his information.

Investigator Ledesma testified at trial that an undercover operation was set up to put Kidd in contact with Nancy. Kidd provided Nancy with a phone number of a person to contact to kill Joseph. Nancy did not call the number for one month. Investigator Ledesma stated that there was still concern that Joseph's life was in danger. An undercover operation was put in place where Kidd would again make contact with Nancy to determine if she still had an interest in having Joseph killed.

Deputy Terry Young testified that as part of the operation, he worked undercover as a hit man. Deputy Young was known to Nancy as "Dwight" and the phone number given to Nancy for the hit man went to a cell phone in Deputy Young's possession. Kidd met with Nancy on December 7, 2011, and encouraged her to call "Dwight." Nancy did not want to call from her phone, so Kidd called the number from

his phone. Deputy Young spoke with Nancy on the phone, and they set up a meeting place to discuss the murder for hire.

Deputy Young testified that he met with Nancy, and they discussed the murder of her husband. Nancy wanted the murder to look like an accident. That conversation was recorded and played for the jury. Nancy gave "Dwight" her wedding ring as down payment for the murder. She then agreed to pay $60,000 from the proceeds of the life insurance. "Dwight" told Nancy he needed a picture of her husband, and Nancy went to her house and returned with two identification cards belonging to Joseph. "Dwight" gave Nancy an opportunity to back out of the murder, but Nancy wanted to continue. When Nancy left the meeting, she said, "I always knew I was going to heaven, but now I'm going to hell." Nancy then laughed.

Lieutenant John Pollack, with the Brazos County Sheriff's Office, testified that he informed Joseph that his life could be in jeopardy. He asked Joseph to cooperate with the sheriff's office, and Joseph agreed. Lieutenant Pollack stated that he was listening to the conversation between Nancy and Deputy Young through Deputy Young's body wire. Lieutenant Pollack heard Nancy offer payment to kill her husband. Nancy wanted the murder to occur as soon as possible. Lieutenant Pollack set up the staged death of Joseph, and he went to Nancy's house on December 8, 2011, to inform her of the death. Lieutenant Pollack asked Nancy to come to the sheriff's office for some questions. He had arranged for Deputy Young to be brought through in handcuffs where Nancy could see him.

Investigator Ledesma was present during the questioning of Nancy. He testified that after bringing Deputy Young through, Nancy denied knowing him. They showed Nancy the identification cards that she had given to "Dwight," and she indicated she did not know how he got them. Investigator Ledesma also had Nancy's wedding ring that she had given "Dwight," and she denied that it was hers. Nancy was allowed to leave the sheriff's office, but she was under surveillance. Investigator Ledesma obtained an arrest warrant, and Nancy was arrested on December 9, 2011.

### Exclusion of Evidence

In her first issue, Nancy argues that the trial court erred in excluding a recording of her statement to police following her arrest. Nancy went to the sheriff's office immediately after being notified that Joseph had been killed. She gave a statement and a video and audio recording of that statement was played for the jury. Nancy also gave a statement after her arrest. At trial, Nancy sought to introduce a recording of her post-arrest statement. The State objected to the introduction of the recording as self-serving hearsay. The trial court sustained the State's objection.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Nancy first argues that her statement was admissible under the Rule of Optional Completeness. Rule 107 of the Texas Rules of Evidence provides:

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

TEX. R. EVID. 107. Nancy argues that the pre-arrest and post-arrest statements were on the same subject; and therefore, the post-arrest statement was admissible. Nancy contends that both statements discussed her marriage, that the second statement references the first statement, and that both statements reference the wedding ring given to "Dwight." However, Nancy does not state how the post-arrest statement was necessary to make the earlier statement fully understood or explained. *See Sauceda v. State*, 129 S.W.3d 116, 123 (Tex.Crim.App.2004); *Estrada v. State*, 352 S.W.3d 762, 769 (Tex.App.-San Antonio 2011, pet. ref'd), *cert. den'd*, 133 S.Ct. 212 (2012). There is nothing in the record to indicate that the post-arrest statement was necessary to explain her first statement or to make it fully understood.

Nancy next argues that the statement was admissible as a statement against interest. As an exception to the hearsay rule, the Rules of Evidence provide:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX. R. EVID. 803(24).  When determining whether to admit a defendant's statement under this rule, the trial court should balance the defendant's competing self-serving and contrary interests to determine their predominant nature and the level of trustworthiness to be accorded.  *Estrada v. State*, 352 S.W.3d at 770 (quoting *Wood v. State*, 18 S.W.3d 642, 651 (Tex. Crim. App. 2000)).  The hearsay exception does not apply if the statement tends to absolve the defendant of criminal responsibility.  *Id*.

Nancy argues that her post-arrest statement was admissible as a statement against interest because she stated "so, yeah, I'm guilty."  Throughout her post-arrest statement Nancy claims that she was "set up" and that she thought it was a joke.  She further claims that she did not want Joseph to die.  Nancy's post-arrest statement seeks to downplay her involvement in the solicitation of Joseph's murder and to absolve her of criminal responsibility.  *Estrada v. State*, 352 S.W.3d at 770.  We find that the trial court did not abuse its discretion in refusing to admit the post-arrest statement.  Moreover, Nancy testified at trial and was able to present her defensive theories to the jury.  We overrule the first issue.

### Entrapment

In the second issue, Nancy argues that the evidence is insufficient to support the jury's rejection of the defense of entrapment.  The defense of entrapment is set out in the Texas Penal Code as follows:

> (a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense.  Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

TEX. PENAL CODE. ANN. § 8.06 (West 2011).  When a defendant raises the defense of entrapment at trial, she has the burden of producing evidence to establish every element of that defense.  She must present a prima facie case that: 1) she engaged in the conduct charged; 2) because she was induced to do so by a law enforcement agent; 3) who used persuasion or other means;  and 4) those means were likely to cause persons to commit the offense.  *Hernandez v. State*, 161 S.W.3d 491, 497(Tex. Crim. App. 2005).  Once the defense makes a prima facie showing of each element, the State then has the burden of persuasion to disprove entrapment beyond a reasonable doubt.  *Hernandez v. State*, 161 S.W.3d at 498.

Nancy argues that Kidd befriended her and first raised the idea of killing Joseph.  She states that Kidd provided her with the number of a hit man and that Kidd placed the call to "Dwight."  Nancy further argues that when she spoke with "Dwight" on the phone, he first mentioned killing Joseph to her and he insisted on meeting that night.  Nancy contends that she was induced by law enforcement into committing the offense.

Kidd testified that Nancy asked him to kill her husband, and he provided this information to law enforcement.  Investigator Ledesma testified that law enforcement had Kidd make contact with Nancy because they felt Joseph's life could be in danger.  Law enforcement officials wanted to insure that Nancy was not going to kill Joseph herself or hire someone else to do it.

Nancy drove herself to meet with "Dwight" to make arrangements for him to kill her husband. The jury heard the taped conversation between Nancy and "Dwight." Nancy had several opportunities to back out and to stop the offense of solicitation to commit murder. Investigator Young informed Nancy that "once this is done, it's done," and Nancy wanted to continue with the plan to kill her husband.

The jury assessed the credibility of the evidence and rejected Nancy's defense of entrapment. *See Hernandez v. State*, 161 S.W.3d at 498. In reviewing a jury's rejection of an entrapment defense, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the criminal offense beyond a reasonable doubt and also could have found against the defendant on the issue of entrapment beyond a reasonable doubt. *Villarreal v. State*, 267 S.W.3d 204, 210 (Tex.App.-Corpus Christi 2008, no pet.). After reviewing the evidence, we find that the jury had reason to disbelieve Nancy's claim that she was induced to commit the offense. We find that the evidence is legally sufficient to support both the verdict of guilt and the rejection of the entrapment defense. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed January 9, 2014
Do not publish
[CRPM]